WO                                                                                           KAB

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

Douglas Wayne Derello, Jr.,    No. CV 18-03575-PHX-MTL (JFM)

Plaintiff,

v.                             **ORDER**

Unknown Sanchez, et al.,

Defendants.

Plaintiff Douglas Wayne Derello, Jr., who is currently confined in the Arizona State Prison Complex-Eyman, filed a pro se civil rights Complaint pursuant to 42 U.S.C. § 1983. Before the Court are Plaintiff's Motion to Clarify (Doc. 64), which the Magistrate Judge construed as a motion seeking injunctive relief, and Plaintiff's Notice to the Chief District Court Judge (Doc. 71), which the Magistrate Judge construed as a Motion seeking injunctive relief.

The Court will deny the Motions.

**I.    Motions for Injunctive Relief**

In his Motion to Clarify, Plaintiff states that he is not given a proper amount of time to use a typewriter in his cell and that Defendant Harris claims the Arizona Department of Corrections (ADC) cannot find Plaintiff's typewriter ribbons and correction tape. As relief, Plaintiff requests that he be placed "back at South Unit" since he was moved "without provocation," that he be given his typewriter, that he be "allowed a minimum to get the documents needed from his legal property held by Defendant Harris," that Defendant

1  Harris and/or ADC agents be ordered not to destroy Plaintiff's property, and that
2  Defendants be ordered not to retaliate against Plaintiff. (Doc. 64.)

In Response, Defendant Harris asserts that when an inmate is being housed in maximum custody or close custody, he cannot possess a typewriter in his cell due to safety and security concerns, and Plaintiff is currently housed in close custody. (Doc. 81.) Defendant further asserts that Plaintiff had not advised staff he wished to use his typewriter, but after learning that Plaintiff wished to use his typewriter, the typewriter was forwarded to Plaintiff's Corrections Officer (CO) III so that Plaintiff could have access to his typewriter. (*Id.*) Defendant asserts that Plaintiff's typewriter ribbons and correction tape were found on July 18, 2019 and returned to Plaintiff. (*Id.*) Defendant also asserts that Plaintiff was provided access to all of his legal materials on July 18, 2019 for 4 ½ hours. (*Id.*) Defendant asserts that he has no authority to transfer Plaintiff back to "South Unit" or to give Plaintiff a typewriter in his cell. (*Id.*) As a result, Defendant Harris argues that Plaintiff's claims regarding his typewriter ribbon, correction tape, and access to legal materials should be denied as moot, and the remainder of the motion should be denied because Defendant Harris does not have authority to grant Plaintiff relief and Plaintiff cannot meet the standard for obtaining a preliminary injunction. In reply, Plaintiff argues that close custody inmates are allowed to have a typewriter in their cells. Plaintiff admits that his typewriter ribbons were returned to him.

In his Notice, Plaintiff states that on June 10, 2019, he overheard a group of officers stating that inmates that file lawsuits "need [their] asses kicked" and noted that Plaintiff "has a lawsuit against Harris." (Doc. 71 at 2.) Plaintiff asserts that after he left medical on July 18, 2019, an officer stated "th[ere's] that piece of shit, did you get all your stuff yesterday?," apparently referring to an extra blanket that medical had ordered for Plaintiff. (*Id.* at 2.) Plaintiff asserts that a few minutes later, officers confiscated Plaintiff's extra blanket. (*Id.* at 3.) Plaintiff believes that if he had refused "in any way," he would have been badly assaulted. (*Id.*) As relief, Plaintiff requests that he be separated from Defendant Harris so that they are both no longer at SMU. (*Id.*) In response, Defendant asserts that

Plaintiff did not have a valid Special Needs Order (SNO) for an extra blanket when his blanket was taken, but Plaintiff may now possess a medical blanket pursuant to the SNO, and he now has three blankets in his cell and, as a result, his request for an additional blanket should be denied as moot. (Doc. 106.) In Reply, Plaintiff denies that his extra blanket has been returned to him. (Doc. 108.)

**II.      Legal Standard**

"A preliminary injunction is 'an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion.'" *Lopez v. Brewer*, 680 F.3d 1068, 1072 (9th Cir. 2012) (quoting *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (per curiam); *see also Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008) (citation omitted) ("[a] preliminary injunction is an extraordinary remedy never awarded as of right"). A plaintiff seeking a preliminary injunction must show that (1) he is likely to succeed on the merits, (2) he is likely to suffer irreparable harm without an injunction, (3) the balance of equities tips in his favor, and (4) an injunction is in the public interest. *Winter*, 555 U.S. at 20. "But if a plaintiff can only show that there are 'serious questions going to the merits'—a lesser showing than likelihood of success on the merits—then a preliminary injunction may still issue if the 'balance of hardships tips sharply in the plaintiff's favor,' and the other two *Winter* factors are satisfied." *Shell Offshore, Inc. v. Greenpeace, Inc.*, 709 F.3d 1281, 1291 (9th Cir. 2013) (quoting *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011)). Under this serious questions variant of the *Winter* test, "[t]he elements . . . must be balanced, so that a stronger showing of one element may offset a weaker showing of another." *Lopez*, 680 F.3d at 1072.

Regardless of which standard applies, the movant "has the burden of proof on each element of the test." *See Envtl. Council of Sacramento v. Slater,* 184 F. Supp. 2d 1016, 1027 (E.D. Cal. 2000). Further, there is a heightened burden where a plaintiff seeks a mandatory preliminary injunction, which should not be granted "unless the facts and law

1 | clearly favor the plaintiff." *Comm. of Cent. Am. Refugees v. INS*, 795 F.2d 1434, 1441 (9th Cir. 1986) (citation omitted).

The Prison Litigation Reform Act imposes additional requirements on prisoner litigants who seek preliminary injunctive relief against prison officials and requires that any injunctive relief be narrowly drawn and the least intrusive means necessary to correct the harm. 18 U.S.C. § 3626(a)(2); *see Gilmore v. People of the State of Cal.*, 220 F.3d 987, 999 (9th Cir. 2000).

A court may issue an injunction against a non-party only where the non-party acts in active concert or participation with an enjoined party. Fed. R. Civ. P. 65(d)(2) (a preliminary injunction only binds those who receive actual notice of it by personal service or are parties, their officers, agents, servants, employees, and attorneys, and persons in active concert); *see Zepeda v. INS*, 753 F.2d 719, 727 (9th Cir. 1984) ("A federal court may issue an injunction if it has personal jurisdiction over the parties and subject matter jurisdiction over the claim; it may not attempt to determine the rights of persons not before the court."); *see also Zenith Radio Corp. v. Hazeltine Research, Inc.*, 395 U.S. 100, 110 (1969).

**III. Discussion**

There is no showing that Defendant Harris has any authority over where Plaintiff is housed and, thus, the Court lacks jurisdiction related to Plaintiff's housing location. Although Plaintiff argues that he is being denied access to a typewriter, Defendant asserts that Plaintiff must request access to his typewriter from his CO III, and Plaintiff presents no evidence that his CO III is denying him access to a typewriter when Plaintiff requests access; additionally, there is no showing that Defendant Harris has authority over whether Plaintiff is granted access to his typewriter. Further, based on Defendant's assertion that Plaintiff was allowed to view his legal documents on July 18, 2019 for 4 ½ hours, it appears that Plaintiff's request to view his legal documents is moot. Plaintiff's remaining requests—that ADC agents be ordered not to destroy Plaintiff's property and that

Defendants be ordered not to retaliate against Plaintiff—are duplicative of federal law and need not be entered into an order. Accordingly, Plaintiff's Motion to Clarify will be denied.

With regard to his request for a medical blanket, Plaintiff has not shown that Defendant Harris was involved in denying Plaintiff a medical blanket or that Plaintiff was denied a medical blanket as retaliation for filing this lawsuit. To the extent Plaintiff argues other officers are denying him medical care, Plaintiff may have a separate claim for relief related to such a claim, but such a claim is not at issue in this lawsuit. Moreover, the relief Plaintiff requests as a result of being denied a medical blanket—that he be separated from Defendant Harris so that they are both no longer at SMU—does not appear to be related to his claim for a medical blanket and is overly broad. Accordingly, the injunctive relief sought in Plaintiff's Notice will be denied.

**IT IS ORDERED:**

(1) The reference to the Magistrate Judge is withdrawn as to Plaintiff's Motion to Clarify (Doc. 64) and Plaintiff's Notice to the Chief District Court Judge (Doc. 71).

(2) Plaintiff's Motion to Clarify (Doc. 64) is **denied**.

(3) Plaintiff's Notice to the Chief District Court Judge (Doc. 71) is **denied**.

Dated this 16th day of December, 2019.

*Michael T. Liburdi*
Michael T. Liburdi
United States District Judge