WO                                                                                           KAB

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Douglas Wayne Derello, Jr., | No. CV 18-03575-PHX-MTL (JFM) |
| Plaintiff, | |
| v. | **ORDER** |
| Unknown Sanchez, et al., | |
| Defendants. | |

Plaintiff Douglas Wayne Derello, Jr., who is currently confined in Arizona State Prison Complex-Eyman, brought this civil rights action pursuant to 42 U.S.C. § 1983. (Doc. 1.) Defendant Harris moves for summary judgment, and Plaintiff opposes.[1] (Docs. 38, 86, 109.)[2]

## I.   Background

In his Complaint, Plaintiff relevantly alleged as follows. On June 16, 2017, Plaintiff was transferred to the custody of the Arizona Department of Corrections (ADC) and brought four legal boxes, a trash bag full of legal papers, and his cane with him. (Doc. 7 at 3.) An officer confiscated the property and told Plaintiff that he would go through the legal materials and return them to Plaintiff, but Sanchez told Plaintiff his property would not be returned. (*Id.*) Sanchez then asked Plaintiff if he was still suing the prison and when

---

[1] The Court provided notice to Plaintiff pursuant to *Rand v. Rowland*, 154 F.3d 952, 962 (9th Cir. 1998) (en banc) regarding the requirements of a response. (Doc. 44.)

[2] Defendant did not file a reply in support of his Motion for Summary Judgment.

Plaintiff replied affirmatively, Sanchez stated that in that case, Plaintiff would not get any property. (*Id.*) On June 19, 2017, Plaintiff submitted an inmate letter regarding his property and cane to a correctional officer and Defendant Harris, the property supervisor. (*Id.* at 4.) On June 26, Plaintiff told Defendant Harris that he filed a grievance regarding the withholding of his legal property and Harris responded "I will show you what your grievance filing mean[s] to me" and several weeks later, Harris sent Plaintiff a document indicating that his property was being stored. (*Id.*)

After that, the more Plaintiff requested his legal property "the wors[e his] plight became" and although Plaintiff informed Defendant Doe about the adverse treatment against him, Doe did nothing about it. (*Id.* at 4-5.) When Plaintiff was moved to a new unit, he discovered that his property had been inventoried by Defendant Lewis and his purchased clothing and a lot of his legal material were missing and when he returned to his original unit "four days later," he went "through the same problems with Harris [regarding his] legal material." (*Id.* at 7.) On November 2, a property officer delivered a lot of Plaintiff's legal documents and told Plaintiff that Harris instructed the officer to give the legal property to Plaintiff and that the officer would try to find Plaintiff's clothes and the rest of his legal work. (*Id.* at 5.) On November 7, Sanchez and another officer went to Plaintiff's cell and asked him if he was going to file another grievance against her regarding his property, and when he arrived at the new unit, all the property he received from the property officer was gone. (*Id.*)

On screening under 28 U.S.C. § 1915A(a), the Court determined that Plaintiff stated First Amendment retaliation claims against Defendants Harris and Sanchez, a failure to supervise claim against Defendant Doe, and an Eighth Amendment medical care claim against Defendant Igwe. (*Id.* at 8-9.) The Court dismissed the remaining claims and Defendants. (*Id.* at 10.) Thereafter, Defendant Doe was dismissed because Plaintiff did not file a timely notice of substitution and Defendant Sanchez was dismissed for failure to timely effect service of process. (Docs. 45 and 58.)

. . . .

Defendant Harris[3] argues that he is entitled to summary judgment as to the First Amendment retaliation claim asserted against him because Plaintiff failed to properly exhaust his available administrative remedies. (Doc. 38.)

## II. Legal Standards

### A. Summary Judgment

A court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The movant bears the initial responsibility of presenting the basis for its motion and identifying those portions of the record, together with affidavits, if any, that it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323.

If the movant fails to carry its initial burden of production, the nonmovant need not produce anything. *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Co., Inc.*, 210 F.3d 1099, 1102-03 (9th Cir. 2000). But if the movant meets its initial responsibility, the burden shifts to the nonmovant to demonstrate the existence of a factual dispute and that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmovant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 250 (1986); *see Triton Energy Corp. v. Square D. Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995). The nonmovant need not establish a material issue of fact conclusively in its favor, *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288-89 (1968); however, it must "come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal citation omitted); *see* Fed. R. Civ. P. 56(c)(1).

---

[3] Defendants Sanchez and Doe also joined in the Motion for Summary Judgment, but because those Defendants were subsequently dismissed, the Court will not discuss whether Plaintiff properly exhausted his available administrative remedies as to his claims against those Defendants.

At summary judgment, the judge's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249. In its analysis, the court must believe the nonmovant's evidence and draw all inferences in the nonmovant's favor. *Id.* at 255. The court need consider only the cited materials, but it may consider any other materials in the record. Fed. R. Civ. P. 56(c)(3).

### B. Exhaustion

Under the Prison Litigation Reform Act, a prisoner must exhaust "available" administrative remedies before filing an action in federal court. *See* 42 U.S.C. § 1997e(a); *Vaden v. Summerhill*, 449 F.3d 1047, 1050 (9th Cir. 2006); *Brown v. Valoff*, 422 F.3d 926, 934-35 (9th Cir. 2005). The prisoner must complete the administrative review process in accordance with the applicable rules. *See Woodford v. Ngo*, 548 U.S. 81, 92 (2006). Exhaustion is required for all suits about prison life, *Porter v. Nussle*, 534 U.S. 516, 523 (2002), regardless of the type of relief offered through the administrative process, *Booth v. Churner*, 532 U.S. 731, 741 (2001).

The defendant bears the initial burden to show that there was an available administrative remedy and that the prisoner did not exhaust it. *Albino v. Baca*, 747 F.3d 1162, 1169, 1172 (9th Cir. 2014); *see Brown*, 422 F.3d at 936-37 (a defendant must demonstrate that applicable relief remained available in the grievance process). Once that showing is made, the burden shifts to the prisoner, who must either demonstrate that he, in fact, exhausted administrative remedies or "come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." *Albino*, 747 F.3d at 1172. The ultimate burden, however, rests with the defendant. *Id.* Summary judgment is appropriate if the undisputed evidence, viewed in the light most favorable to the prisoner, shows a failure to exhaust. *Id.* at 1166, 1168; *see* Fed. R. Civ. P. 56(a).

If summary judgment is denied, disputed factual questions relevant to exhaustion should be decided by the judge; a plaintiff is not entitled to a jury trial on the issue of exhaustion. *Albino*, 747 F.3d at 1170-71. But if a court finds that the prisoner exhausted

administrative remedies, that administrative remedies were not available, or that the failure to exhaust administrative remedies should be excused, the case proceeds to the merits. *Id.* at 1171.

**III. Facts**

**A. Grievance Procedure**

Defendants' Motion for Summary Judgment includes a copy of Department Order (DO) 802, *Inmate Grievance Procedure*, which governs the ADC's administrative grievance process (hereinafter the " Grievance Procedure" ). (Doc. 42-1 at 12-24.)

Pursuant to the Grievance Procedure, the first step in resolving a complaint is, within ten workdays of the action which caused the complaint, for the inmate to discuss the issue with staff in the area most responsible for the complaint or through submission of an Informal Complaint Resolution Form. (*Id.* at 15, DO 802.20 §§ 2-1-2.2.) If an inmate is unable to informally resolve the complaint, the inmate must submit the Informal Complaint Resolution form (" informal grievance" ) to the CO III in their unit within 10 workdays of the action which caused the complaint; a response must be provided in 15 workdays. (*Id.* at 16, DO 802.20 §§ 2.2-2.3.) If the inmate is dissatisfied with the response, the inmate may submit a formal grievance. (*Id.* at § 2.4.)

For non-medical grievances, within five workdays of receiving the response from the CO III to the informal grievance, the inmate must submit a formal grievance to the CO IV Grievance Coordinator. (DO 802.30 § 3.2.) Within fifteen workdays, the Deputy Warden must prepare a response to the grievance. (*Id.* at § 3.6) If dissatisfied with the response, within five workdays of receipt of the response, the inmate may appeal to the Warden. (*Id.* at 13-14, DO 802.04.) Within twenty workdays, the Warden must prepare a response to the grievance. (*Id.*) If dissatisfied with the response, within five workdays of receipt of the response, the inmate may appeal to the Director. (*Id.* at 17, DO 802.40 § 4.1.) The decision of the Director is final and the ADC considers the Director' s decision to constitute exhaustion of all remedies. (*Id.* at § 4.6.)

. . . .

**B. Plaintiff's Grievances**

On October 23, 2017, Plaintiff submitted an Inmate Informal Complaint Resolution stating that he was moved to a new unit on October 12, but four days later was moved back and when he came back, a lot of his legal paperwork was missing and so were his clothes. (Doc. 86 at 22.) In the Informal, Plaintiff provided a list of the clothes he was missing and stated that he "believe[s] it was purposefully done" and "this is wrong." (*Id.*)

On November 15, 2017, Plaintiff submitted an Inmate Grievance through the emergency procedure stating that he was trying to speak to someone to no avail about his "retaliation that is staff-related." (Doc. 42-3 at 14.) B. Monaghan responded that based on the description, Plaintiff's issue did not meet the criteria for an emergency grievance, but that the request was passed on to CO McCarthy via phone on November 15, 2017. (Doc. 42-3 at 14.)

On November 30, 2017, Plaintiff submitted an inmate grievance form stating that the October 23 Informal had gone unanswered. (Doc. 86 at 21.) Most of the Informal is illegible. (*See id.*) On December 8, 2017, CO III Brown noted that the Inmate Grievance was "unprocessed" because on December 7, 2017, Brown had a "face to face with [Plaintiff] to determine the nature of [his] grievance. [Plaintiff] stated that [he was] missing legal boxes. [Plaintiff] made no informal attempt per DO 1002. However, [Brown] spoke with the CDU staff and they . . . confirmed that [Plaintiff's] legal boxes are there. [Plaintiff] exchanged two of them last week." (Doc. 86 at 21.) On December 13, 2017, Plaintiff attempted to appeal the denial of the grievance; Plaintiff stated that Brown should have considered the October 23 informal to be the informal resolution for the November 15, grievance, but that appeal was denied because "there is no grievance to appeal." (Doc. 42-3 at 20.)

On December 17, 2017, Plaintiff attempted to submit an Inmate Grievance form, which is largely illegible. (Doc. 42-3 at 24.) The Court can glean that Plaintiff complains that "Sgt. Harris" would not give Plaintiff his legal material for the "past fo[u]r days." (*Id.*) In the grievance under "proposed resolution," Plaintiff requests the return of his legal

documents and states that he had been trying to obtain his legal boxes from "Sgt. Harris" since January 2017. (*Id.*) CO III Brown returned the grievance as "unprocessed" because "no informal attempt and out of time frames to submit an informal resolution per DO 802."

**IV.     Discussion**

Defendant Harris argues that he is entitled to summary judgment because Plaintiff did not timely submit a standard grievance appeal to the Director or Director's level regarding the allegations against Harris.

In Response, Plaintiff asserts that CO III Brown made the grievance process unavailable to him because she refused to log Plaintiff's grievances. (Doc. 86 at 5.) Plaintiff also asserts that he filed grievances against Harris while at SMU, but CO III Riefer filed the grievance as medical when it was not a medical grievance. (*Id.* at 7-8.) Plaintiff asserts that as a result of Brown's and Riefer's actions, the grievance process was effectively unavailable to him.

Although most of Plaintiff's grievance documents are illegible, ADC officials provided responses to the grievances based on the illegible contents; Defendant has made no attempt to provide the Court with legible copies or to provide transcripts of the contents of the grievances.

Although Defendant has met his burden by showing that there is an administrative grievance process that was available to Plaintiff, Plaintiff argues that the grievance process was effectively unavailable because, in part, CO III Brown refused to process his grievances. Indeed, although it is difficult to read, CO III Brown returned a grievance as "unprocessed" that complained about Defendant Harris's conduct over the "past fo[u]r days" and incorrectly stated that the grievance was untimely and indicated that because it was "untimely," Plaintiff would not be able to grieve the issue. As such, Plaintiff has met his burden of showing that the grievance process was effectively unavailable to him because CO III Brown refused to process a timely grievance regarding Defendant Harris withholding Plaintiff's legal boxes. Moreover, the grievance documents show that CO III Brown incorrectly stated that Plaintiff did not submit an informal grievance regarding his

legal boxes when she refused to process his November 30, 2017 Inmate Grievance, but Plaintiff's October 23, 2017 informal grievance does state that his legal documents were missing. Defendant has not provided any explanation as to the discrepancies in these responses, did not file a reply in support of the Motion for Summary Judgment, and does not provide legible documents to the Court or explain how CO III Brown could have properly responded substantively to grievances that were illegible. Accordingly, Defendant Harris has not met his ultimate burden of demonstrating that the grievance process was available to Plaintiff and Harris's Motion for Summary Judgment will be denied.

**IT IS ORDERED:**

(1) The reference to the Magistrate Judge is withdrawn as to Defendants' Motion for Summary Judgment (Doc. 38) and Plaintiff's Motion requesting computer use (Doc. 141).

(2) Defendants' Motion for Summary Judgment (Doc. 38) is **denied**.

(3) Plaintiff's Motion requesting computer use (Doc. 141) is **denied as moot** because the Court ordered that Plaintiff be provided a word processor to respond to Igwe's Motion for Summary Judgment.[4]

Dated this 6th day of February, 2020.

*Michael T. Liburdi*
Michael T. Liburdi
United States District Judge

---

[4] *See* Doc. 140.